**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:19CR701** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **STEPHON CUNNINGHAM,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Defendant Stephon Cunningham asks the Court to Revoke the Detention Order.  (Doc. 22).  For the following reasons, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

On June 1, 2019, City of Cleveland police officers responded to a report of two males with firearms in the neighborhood.  The caller identified a male wearing a red and blue striped shirt as the individual carrying the weapons.  From the report, the duo exited a car and went behind a house where they placed the firearms.

When police arrived at the scene, they encountered five males on the front porch.  Only one male, however, fit the caller's description.  That individual was later identified as Defendant.  Authorities initially detained Defendant while they corroborated the report.  During their corroboration, officers found two firearms behind the house.  Officers also spoke with four individuals—two adults and two children—present at the scene to confirm the accuracy of the phone call.

Based on their investigation, police arrested Defendant and seized the firearms.  A DNA test was conducted on the firearms and the firearms were safely stored.  Shortly thereafter, the State charged Defendant with weapons offenses.  The State trial court granted Defendant pretrial release.

In August of 2019, Federal investigators obtained a search warrant for Defendant's DNA to compare to the samples retrieved from the firearms.  In order to execute the search warrant, authorities requested Defendant voluntarily appear at the local police station.  While there is some discrepancy over the willfulness of his appearance, Defendant ultimately appeared.  Once in possession of Defendant's DNA, authorities tested and compared the samples.  One of the firearms came back as a "major contributor" while the other test came back inconclusive.

On November 11, 2019, a Federal Grand Jury indicted Defendant with two counts of Felon in Possession of Firearm and Ammunition, violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Doc. 1).  The State then dropped its charges and reflected the dismissal on the electronic docket.  The State docket also reflected the fact that Federal prosecutors indicted Defendant.  Over the next few months, Federal authorities attempted to apprehend Defendant.  While there are discrepancies as to authorities' efforts in apprehending Defendant, Defendant ultimately self-surrendered on February 5, 2020.

Before his self-surrender, on January 16, 2020, State prosecutors indicted Defendant with charges of felonious assault.  The charges stem from the activities occurring on or about August 17, 2020 in Cleveland, Ohio.  At that time, police spoke to a victim in the hospital who indicated that Defendant assaulted him.  According to the victim, the assault occurred due to a payment dispute over a vehicle that the victim obtained from Defendant's business.  Defendant denies the allegations.

On February 12 and 18, 2020, Magistrate Judge Baughman held a Detention Hearing. The parties presented evidence and the court heard testimony. On February 19, 2020, the Magistrate Judge issued his Detention Order detaining Defendant. (Doc. 10).

It is from this Detention Order that Defendant currently appeals. According to Defendant, the Magistrate Judge made the incorrect decision in detaining Defendant. (Doc. 22). In addition, the current situation of COVID-19 and jail facilities justifies Defendant's release while pending trial. The Government opposes the request. (Doc. 23). Shortly thereafter, Defendant filed a Reply in support of his request. (Doc. 24).

## II. LAW & ANALYSIS

### A.  Review Under § 3145(b)

District courts review a magistrate's order of pretrial detention under a *de novo* standard. *United States v. Alexander*, 742 F. Supp. 421, 423 (N.D. Ohio 1990). Under 18 U.S.C. § 3142, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing § 3142(e)).

The default position under § 3142 is the pretrial release of a defendant. 18 U.S.C. § 3142(b). It is the government's burden to demonstrate "that no conditions of release can assure…the safety of the community." *Stone*, 608 F.3d at 946. A finding of dangerousness must be "supported by clear and convincing evidence." *Id.* at 945 (citing § 3142(f)(2)(b)). In order to determine if the government has met its burden, a court must consider the § 3142(g) factors. *Id.* at 946.

### 1.  Nature and Circumstances of the Offense

The nature and circumstances of Defendant's offense favors detention.  Section 3142(g)(1) requires a court to consider the nature and circumstances of the offenses charged, including crimes that involve "a…firearm."  18 U.S.C. § 3142(g)(1).  Here, the allegations against Defendant involve two firearms.  Thus, the charges on their face indicate a threat to society.  As to the specific circumstances of the charges, the evidence reflects that Defendant possessed the firearms in a neighborhood with children in the vicinity.  Moreover, the Government presented evidence that the firearms had been previously stolen.  Accordingly, the nature and circumstances of the offense favor detention.

### 2.      Weight of Evidence

The weight of evidence also favors detention.  This second factor of § 3142 goes to the weight of the evidence of Defendant's dangerousness, not the evidence bearing on defendant's guilt.  *Stone*, 608 F.3d at 948 (citing *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (Section 3142(g) "neither requires nor permits a pretrial determination of guilt")).  In addition to the above circumstances, Defendant is also facing felonious assault charges in State court.  By nature of that indictment, there is at least probable cause to believe Defendant committed the assault.  As will be addressed below, the assault charges provide evidence of Defendant's dangerousness to the public.  Accordingly, this factor weighs in favor of detention.

### 3.      History and Characteristics of Defendant

In considering the history and characteristics of Defendant, the Court considers:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

> sentencing, appeal or completion of sentence for an offense under
> Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A)–(B).

There are a lot of positive factors on Defendant's side in favor of release: he has resided in the community for a substantial period; he has strong family support; and has employment should the Court release him. Also, his past lung issues coupled with the presence of COVID-19 favor release. Further, Defendant performed well on bond in the past. Finally, regardless of the conflicting testimony, that fact remains that Defendant voluntarily submitted to a DNA test and voluntarily surrendered to authorities.

However, there are many negative factors as well: Defendant has a lengthy criminal history involving narcotics and firearms, as well as a past-history of failing to appear for Court ordered events. Moreover, Defendant was under State community control when he committed the instant offense.

Defendant argues that the Court should look at Defendant's criminal history qualitatively as opposed to quantitatively. (Doc. 24, PageID: 213). The Court appreciates that argument. But what the Court cannot ignore is the poor decision-making Defendant has recently shown. As Defendant discussed in his Motion, he is charged with a "status offense." (Doc. 22, PageID: 124). This type of charge reflects poorly on Defendant's character. As a convicted felon, Defendant should have known to avoid situations that could put his freedom in jeopardy. One of those situations is being in the presence of firearms. The Court makes no finding as to whether Defendant possessed the guns as the Government alleges. But there seems to be no doubt that Defendant was present in a compromising situation given his past criminal history. He chose to involve himself in such a situation, which reflects poorly on his decision-making.

Defendant's poor decision-making is only exacerbated by the pending State allegations of assault.  Again, the Court makes no determination as to Defendant's guilt to the assault charges.  But a State grand jury found probable cause to believe that Defendant committed an assault of a community member.  This is concerning.  Moreover, the alleged assault occurred while Defendant was on bond pending the State firearm charges.  Even affording Defendant the presumption of innocence as he deserves, he again chose to have some involvement in the assault of community member.  This clearly demonstrates a lack of respect for judicial supervision and does not reflect well should the Court here release Defendant.

After considering the above, the Court finds Defendant's recent history and poor decision-making weigh in favor of detention.

**4.      The Nature and Seriousness of the Danger to Any Person or the Community**

The last factor favors detention.  Section 3142(g)(4) requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).

In the wrong hands, firearms can be dangerous.  Congress has determined that it does not want firearms in the hands of felons.  Defendant allegedly ignored those restrictions.  And the evidence that the firearms had been previously stolen reflects an even serious threat to the community.  This case presents a situation involving dangerous tools, procured in dangerous ways and allegedly possessed by a person who Congress has previously determined dangerous.

In addition to the allegations in this case, the State accuses Defendant of assaulting a member of the public.  The State presented probable cause to believe the incident occurred.  Moreover, the incident allegedly arose over a dispute concerning payment.  The Court finds it very difficult to release Defendant into the community when he allegedly decides to settle debts

with physical violence.  Defendant will have the opportunity to address those allegations one day.  But, at this moment, the allegations do not bode well for Defendant's claim that he is not a threat to any person in the community.  Accordingly, this factor weighs in favor of detention.

After balancing the presumption in favor of release and the § 3142(g) factors, the Court concludes that clear and convincing evidence supports the finding of Defendant's dangerousness to the community.  Accordingly, no conditions of release will reasonably assure the community's safety.

## B.    COVID-19 and Changed Circumstances

The presence of COVID-19 in our country does not warrant a reopening of the Detention Hearing.  A district court *may* reopen a detention hearing based on changed circumstances.  18 U.S.C. § 3142(f)(2)(B).  However, the new information must 1) have been unknown to the movant at the time of the hearing; and 2) have "a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community."  *United States v. Watson*, 475 Fed. App'x 598, 600 (citing § 3142(f)(2)(B)).  "In other words, the new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community."  *Id.*

As discussed above, Defendant remains a danger to the community despite his health conditions and the presence of COVID-19.  Defendant's health conditions are not changed circumstances.  He's dealt with his current ailments since 2014.  Regarding COVID-19, the Court understands the general risks that COVID-19 presents to certain populations, including those in jails and prisons.  But courts throughout the country "have held that these risks, without more, do not amount to a 'material change of circumstances warranting a renewed evaluation of

[a] prior detention order." *United States v. Tawfik*, 2020 WL 1672655, at *2 (E.D. Mich. Apr. 6, 2020) (citing cases finding same).  Moreover, jail officials continue to take the necessary precautions to limit the introduction and spread of COVID-19 at the facility.[1]  (Doc. 23, PageID: 172-79).  Defendant's citation to a transcript before a district judge in Pennsylvania does not impact the analysis.  There—even with evidence of a lack of testing—the district judge determined that prison officials were handling the outbreak responsibly.  (Doc. 24-1, PageID: 236).  Moreover, the facility has reportedly tested at least four inmates.[2]  Finally, Dr. Ramnath's opinion has little impact on the Court's decision.  As mentioned, the Court understands that conditions in prison facilities are not ideal for containing the spread of COVID-19.  But this does not justify the widespread release of inmates.  Rather, the safety of the community must be considered.  And, as the Court previously determined, Defendant remains a threat to public safety.

As discussed above, the presence of COVID-19 and Defendant's medical history presents some support for Defendant's release.  The Court finds however, that Defendant remains a danger to the public even after considering COVID-19.

---

[1] As of May 12, 2020, Northeast Ohio Correctional Center—the facility where Defendant is currently detained—has reported that no inmates have contracted COVID-19.  (https://drc.ohio.gov/) (last accessed May 13, 2020).  While authorities have locked-down the institution, this appears to be a precautionary measure due to five of the institution's staff members testing positive for the virus.

[2] *See* supra note 1.

- 8 -

### III. Conclusion

For the foregoing reasons, the Court finds there is 'clear and convincing evidence' that no condition or combination of conditions will reasonably assure the community's safety.  This finding remains true despite COVID-19.  Accordingly, the Court **DENIES** Defendant's Motion (Doc. 22).

**IT IS SO ORDERED.**

          s/ Christopher A. Boyko

          **CHRISTOPHER A. BOYKO**

          **Senior United States District Judge**

**Dated: May 13, 2020**